Filed 4/14/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| GLOBAL HAWK INSURANCE COMPANY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JERRY LE,<br><br>    Defendant and Appellant. | A137976<br><br>(Alameda County<br>Super. Ct. No. VG11598026) |

    Appellant Jerry Le was one of two truck drivers on a cross-country trip for V&H Transport (V&H), a trip for which he would be paid a lump sum of $1,100, with no deductions. Le was seriously injured when, while he was asleep, the other driver was involved in a one-vehicle accident. After the accident, V&H refused to pay Le the lump sum promised, telling him that he did not finish the trip. He was also told he was not an employee, and would not be eligible for worker's compensation.

    Le sued V&H and its owners for his injuries, who tendered defense to Global Hawk Insurance Company (Global Hawk), which insured V&H under a commercial auto truckers liability insurance policy. Global Hawk refused the defense, and filed an action for declaratory relief, contending that Le's injuries were excluded from coverage because he was an employee. Global Hawk moved for summary judgment, which the trial court granted, ignoring the pertinent facts in the case and holding that the definition of employee in certain federal regulations—regulations, not incidentally, enacted for the benefit of the public and nowhere mentioned in the insurance policy—controlled. We reverse.

1

# BACKGROUND

## The Facts

In 2009 Le attended driving school to obtain a Class A driver's license, to allow him to drive commercial vehicles. He passed the appropriate tests, following which he obtained some long haul driving jobs. Sometime in 2010, some friends referred Le to V&H, and in late November or early December he spoke with Tuyet Vu, one of the co-owners of V&H. Vu took down some information from Le, and then told him she did not have any driving jobs available at that time but would have one in about a week. According to Le's declaration, Vu said "that V&H would call me if it needed a driver for a particular job, I would be paid a lump sum for that job, I would not receive any benefits, no taxes, social security or other deductions would be taken out of my pay and I would receive a 1099 at the end of the year for taxes. [¶] . . . Ms. Vu made no representation as to how much V&H would use me or how many jobs would be available for me. In other words, there was no guarantee or representation of how much work I would receive through V&H. I was free to turn down a job if I wanted and I was free to perform driving services for other companies or individuals, neither of which would have prevented me from taking or receiving job assignments from V&H in the future."

A few days later Vu told Le of a job driving with Quyen Cao[1] on a cross-country trip. The job consisted of hauling goods to New York, then to Georgia, then back to New York, and finally returning to Los Angeles. The trip was expected to last 10 days. V&H would pay Le a lump sum of $1,100. Vu told Le that he would be receiving "a 1099," and that no taxes, social security, or other deductions would be taken out of the lump sum, the same arrangements Le had with his other driving jobs.

Le and Cao traveled from Los Angeles to New York, then to Georgia, then back to New York, and began the trip home. On the morning of December 12, 2010, with Cao driving and Le asleep, the truck was involved in a single vehicle accident. Le was ejected from the cab and suffered serious injuries, including a broken neck.

---

[1] Cao is sometimes referred to in the record as Gao. We use Cao because it is the spelling used in the briefing.

After the accident, Le talked to Vu about being paid. Vu refused, saying Le had not finished the trip and she would not pay him the $1,100. Le complained that he was seriously ill and was vomiting blood, and Vu gave Le $600 or $700, apparently out of pity. Vu specifically told Le that he was not an employee and would not be entitled to worker's compensation.

**Le's Complaint for Damages**

On June 1, 2011, Le filed a complaint for damages in Los Angeles Superior Court; it named three defendants including Cao and V&H. According to representations by Le, and documents submitted by him via a request for judicial notice,[2] none of the defendants answered, and three defaults were entered on August 29, 2011. This suit followed shortly thereafter.

**Global Hawk's Complaint in Declaratory Relief**

On October 3, 2011, Global Hawk filed a complaint in Alameda County Superior Court, naming six defendants: Le, the four defendants named in Le's action, and Giao Hoang, who was not originally named in Le's action, but was later added as a defendant. Global Hawk's complaint was styled, "Complaint for Declaratory Relief; Insurance Coverage," and alleged as follows:

Global Hawk had "issued on behalf of defendant Giao Hoang, doing business as V&H Transport, a commercial auto truckers liability policy, policy number CTM391547, in effect from May 10, 2010 until May 10, 2011"; that Le had filed a lawsuit against Cao, V&H, and others in the Superior Court of Los Angeles County (the underlying action); that defendants in the underlying action "tendered the complaint to [Golden Hawk] and demanded that [Golden Hawk] defend and indemnify them. Because Jerry Le is an employee of V&H Transportation and a driver for V&H Transportation and was acting as a co-driver when he was in the sleeper berth at the time of the accident, the claim is

---

[2] We ordered that Le's request for judicial notice would be ruled on with the opinion, which request we now grant.

3

expressly excluded by the policy language. Plaintiff Global Hawk issued a reservation of rights letter and, subsequently, denied the tender of the complaint."

Finally, Golden Hawk alleged that an actual controversy had arisen among the parties regarding whether the policy provided coverage for the injuries alleged in the underlying action. Specifically, Golden Hawk "contends that there is no coverage under the policy in connection with the underlying action, that it has no duty to defend or indemnify defendants Quyen Minh Cao, Vivian Cao, Giao Hoang or V&H Transport, and that it has no obligation in connection with any settlement or judgment that may be made as to the claims of defendant Jerry Le." The contention was based on two exclusions: that the policy did not cover bodily injury to an employee (exclusion 4) or "any obligation for which the insured . . . may be held liable under . . . workers' compensation" (exclusion 3).

Apparently the only defendant to answer Global Hawk's complaint was Le, who filed his answer on January 12, 2012.

### The Motion for Summary Judgment

On August 31, 2012, Global Hawk filed a motion for summary judgment. It was accompanied by a five-page memorandum of points and authorities and a separate statement that set forth 13 claimed-to-be undisputed facts. The brief memorandum of points and authorities cited several cases for boilerplate principles of summary judgment, and a handful of cases upholding the "employee exclusion in auto liability policies," policies not applicable here.

Golden Hawk did cite two cases factually relevant to the setting here: *Perry v. Harco National Ins. Co.* (9th Cir. 1997) 129 F.3d 1072 (*Perry*), and *Consumers County Mutual Ins. Co. v. PW & Sons Trucking Inc.* (5th Cir. 2002) 307 F.3d 362 (*Consumers*). Golden Hawk's brief described *Perry*, its primary authority, as follows: In *Perry*, "the Ninth Circuit applied the employee exclusion found in the federally mandated MCS-90 endorsement to preclude coverage for the driver of a leased vehicle whether or not the driver was an employee or an independent contractor of the insured employer motor carrier."

4

On October 31, 2012, Le filed opposition to the motion, along with his response to the separate statement. That response went on to include "additional disputed facts," one of which was that the Global Hawk policy "does not have an MCS-90 endorsement."

Global Hawk filed no response to Le's additional disputed facts, impliedly conceding that no MCS-90 endorsement was attached to the policy. Golden Hawk did file a reply memorandum of points and authorities which, for the first time, made reference to regulations promulgated under the Federal Motor Carrier Safety Administration Act (FMCSA) contained in 49 U.S.C. § 101 et seq. Golden Hawk's reply also quoted from *Amerigas Propane, L.P. v. Landstar Ranger, Inc.* (2010) 184 Cal.App.4th 981, 996–997 (*Amerigas Propane*), as follows: "Under FMCSR § 390.5 (2009), an 'employee' is broadly defined as including 'a driver of a commercial motor vehicle (*including an independent contractor while in the course of operating a commercial vehicle*) . . . . (49 C.F.R. § 390.5 (2009), italics added.) Section 3110 of the Act likewise defines an 'employee' as 'a driver of a commercial motor vehicle (*including an independent contractor when personally operating a commercial vehicle*) . . . (49 U.S.C.A. § 31101(2), italics added.)" The reply made absolutely no reference to any MCS-90 endorsement.

The trial court issued a tentative ruling, apparently favoring Global Hawk, and the motion came on for hearing on November 15. On November 18, the trial court entered a lengthy order granting summary judgment for plaintiff Global Hawk, which order provided in pertinent part as follows:

"Plaintiff contends that the applicable definition of 'employee' is found in federal regulations. Plaintiff relies on the holding in *Perry v. Harco National Ins. Co.* (9th Cir. 1997) 127 F.3d 1072, 1075. In that case, the policy included an exclusion for bodily injury to the insured's 'employees.' The exclusion was contained in an MCS-90 endorsement. The court found that the endorsement was mandated by federal regulations and, thus, the relevant definition of 'employee' was the definition found in 49 C.F.R. section 390.5. Section 390.5 defines 'employee' to include an independent contractor driving a commercial motor vehicle. The court held that the exclusion from coverage for

5

'employees' was applicable to decedent even though he was an independent contractor. The court rejected the argument that leased drivers would be left without compensation, finding that they can recover under worker's compensation law.

"Defendant Le contends that *Perry* does not apply because the exclusion for bodily injury to employees in this case was not found in an MCS-90 endorsement, the policy did not include an MCS-90 endorsement, and the policy specifically defines 'employee' but does not include 'independent contractors' within that definition. Defendant Le relies on *Northland Insurance Company v. Rhodes* (D. Colo. Dec. 10, 2010, Civ. No. 09-CV-01691) 2010 WL 5110107. There, the court found that because the policy included a definition of 'employee,' and the exclusion was not contained in an MSC-90 [*sic*] endorsement, the parties did not intend to incorporate the regulatory definition of employee into the policy. The court found that the policy did not define 'employee' to include 'independent contractor.'

"The court in *Northland* rejected the holding in *Consumers County Mutual Ins. Co. v. PW & Sons Trucking, Inc.* (5th Cir. 2002) 307 F.3d 362 (*Consumers*). In *Consumers*, the policy contained an exclusion for bodily injury to an 'employee' of the insured arising out of and in the course of employment by the insured. An injured driver claimed that the exclusion was not applicable because he was an independent contractor of the insured, rather than an employee. The court held that the common law definitions of 'employee' and 'independent contractor' were not applicable, because the policy was a public-liability policy designed specifically for use by motor carriers in the interstate trucking industry. The court found that the Motor Carrier Safety Act of 1984, 49 U.S.C. section 13906 (2000) requires motor carriers to procure at least a minimum level of public-liability insurance in order to obtain an operating permit. The purpose of the insurance requirement, said the court, was to ensure that a financially responsible party will be available to compensate members of the public injured in a collision with a commercial vehicle, but the Act does not require motor carriers to obtain coverage for injury to or death of their employees while engaged in the course of their employment. The court applied the definition of 'employee' in 49 C.F.R. section 390.5. The court

found that since the parties clearly intended to comply with federal regulations, it was reasonable to conclude that the parties intended for section 390.5 to supply the definition of the term 'employee' in the policy. The court concluded that the term 'employee' was intended to have the same meaning wherever it appeared in the policy, and noted that the court in *Perry* had come to the same conclusion. (*Consumers, supra,* 307 F.3d at pp. 365–367; see also *Amerigas Propane, LP v. Landstar Ranger, Inc.* (2010) 184 Cal.App.4th 981, 996-997.)

"The court finds that the holdings in *Perry* and *Consumers*, and the reasoning supporting those holdings, are more persuasive, and concludes that the exclusion for injury to an 'employee' of the insured arising out of and in the course of employment by the insured is applicable. V&H Transport, as a motor carrier engaged in the movement of cargo, was necessarily subject to the Motor Carrier Safety Act. (*Amerigas Propane, supra,* 184 Cal.App.4th at 994.) Although the policy in this case provides a definition of 'employee,' nothing in that definition is inconsistent with the definition in 49 C.F.R. section 390.5. The definition of 'employee' in the policy excludes a 'temporary worker,' but 'temporary worker' is defined as a person who is 'furnished to you.' Defendants do not claim that Defendant Jerry Le was furnished to V&H Transport by a third party. Thus, the policy provision providing coverage for bodily injury to temporary workers is not applicable in this case and does not affect the distinction between the terms 'employee' and 'independent contractor' in section 390.5"

Judgment was thereafter entered, from which Le filed a timely notice of appeal.

## DISCUSSION

### Summary Judgment and the Standard of Review

The standard of review following entry of summary judgment is well established. In *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 253-254, we summarized it as follows:

"Code of Civil Procedure section 437c, subdivision (c) provides that summary judgment is properly granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. [Citation.] As applicable here,

7

moving defendants can meet their burden by demonstrating that 'a cause of action has no merit,' which they can do by showing that '[o]ne or more elements of the cause of action cannot be separately established . . . .' [Citations.] Once defendants meet this burden, the burden shifts to plaintiff to show the existence of a triable issue of material fact. [Citation.]

"On appeal '[w]e review a grant of summary judgment de novo; we must decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. [Citations.]' [Citation.] Put another way, we exercise our independent judgment, and decide whether undisputed facts have been established that negate plaintiff's claims. [Citation.] As we put it in *Fisherman's Wharf Bay Cruise Corp. v. Superior Court* (2003) 114 Cal.App.4th 309, 320: '[W]e exercise an independent review to determine if the defendant moving for summary judgment met its burden of establishing a complete defense or of negating each of the plaintiff's theories and establishing that the action was without merit.' [Citation.]

"But other principles guide us as well, including that '[w]e accept as true the facts . . . in the evidence of the party opposing summary judgment and the reasonable inferences that can be drawn from them.' (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 67.) And we must ' "view the evidence in the light most favorable to . . . the losing part[y]" and "liberally construe [his] evidentiary submissions and strictly scrutinize [the moving party's] own evidence, in order to resolve any evidentiary doubts or ambiguities in [the losing party's] favor." ' (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 96–97.)"

Applying those principles here leads to the conclusion that there were triable issues of material fact whether Le was an employee of V&H and whether he was eligible for worker's compensation—and therefore whether the exclusions applied. Since there were, the summary judgment was error.

**The Policy**

As indicated, Global Hawk's position was based on two exclusions in the policy, the pertinent provisions of which read as follows:

8

"Exclusions:

"This insurance does not apply to any of the following:  [¶] . . . [¶]

"3. Workers Compensation

"Any obligation for which the 'insured' or the 'insured's' insurer may be held liable under any worker's compensation, disability benefits of unemployment compensation law or any similar law.

"4. Employee Indemnification and Employer's Liability

" 'Bodily injury' to:

"(a) An 'employee' of the 'insured' arising out of and in the course of:

"(1) Employment by the 'insured', . . . [¶] . . . [¶]

"(b) The spouse, child, parent, brother or sister of that 'employee' as a consequence of Paragraph a above.

"This exclusion applies:

"(1) Whether the 'insured' may be liable as an employer or in any other capacity; and

"(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury."

The definitions section contained the following pertaining to the term "employee":

"F. 'Employee' includes a 'leased worker.'  'Employee' does not include a 'temporary worker.' [¶] . . . [¶]

"I. 'Leased worker' means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business.  'Leased worker' does not include a 'temporary worker.' [¶] . . . [¶]

"R. 'Temporary worker' means a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions."

Thus, the issue is whether Le's injuries are undisputedly excluded from coverage under the Golden Hawk policy because he was an employee of V&H and/or eligible for worker's compensation.

9

**California Law Regarding Employee**

The leading case of *S.G. Borello & Sons Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341 (*Borello*) involved the issue of whether growers had failed to secure worker's compensation for 50 migrant harvesters of crops. The department ruled for the harvesters, finding that the workers were employees. The trial court found that the evidence supported the department's finding. The Court of Appeal reversed, holding the harvesters were independent contractors. The Supreme Court reversed the Court of Appeal, in an exhaustive discussion which included some general principles applicable here, including that the "determination of employee or independent-contractor status is one of fact if dependent upon the resolution of disputed evidence or inferences." (*Id.* at p. 349.) The Supreme Court went on to elaborate numerous factors to be analyzed in making the determination, including the method of payment and whether or not the parties believed they were creating the relationship of employer-employee. (*Id.* at pp. 350–351; accord, *Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 85 (*Cristler*) [listing 12 factors for analysis].)

An employee is contrasted with an independent contractor, categories that are mutually exclusive. (*City of Los Angeles v. Meyers Bros. Parking Systems, Inc.* (1975) 54 Cal.App.3d 135, 138; see Lab. Code, §§ 3351, 3352, 3353, 3357; see generally 3 Witkin, Summary of Cal. Law (10 ed. 2005) Agency and Employment, § 21, p. 61.) In short, whether one is an employee or independent contractor is usually a question of fact.

This law, of course, is crucial to the determination of the issue here, at least if it is to be determined by California common law and insurance principles. As indicated above, the trial court did not proceed in this fashion, and did not apply California law, but rather some federal regulations pertaining to the trucking industry. We conclude that approach was wrong, that California law governed, and that application of California law demonstrates triable issues of material fact as to both exclusions.

As to "employee," Global Hawk goes to great lengths to attempt to show that under the principles enunciated in *Borello*, *Cristler*, and other cases Le was an employee, an argument that runs for pages, proceeding factor by factor. We see no need to make

10

such a detailed analysis, as we easily find triable issues of fact that Le was not an employee, including that he was to be paid a lump sum; he was to be paid without any withholding for taxes; and he was to be provided a 1099 at the year end, a tax form provided to independent contractors. Indeed, Golden Hawk itself describes the trip as a "one off" job. Were that not enough, Le was told by Vu that he was "not an employee" and was not eligible for worker's compensation. Those facts do not indicate, much less demonstrate, employee. They indicate independent contractor. There is a triable issue whether the "employee" exclusion applies. Likewise, the exclusion for "workers compensation."

An independent contractor is not eligible for worker's compensation. (*An Independent Home Support Service, Inc. v. Superior Court* (2006) 145 Cal.App.4th 1418, 1428–1429.) As Witkin puts it, "(1) *In General.* Independent contractors are excluded [from worker's compensation], and the rules to determine whether a person is an employee or an independent contractor apply. (See Lab.C. 3357; supra, § 172.) Under the Act, an 'independent contractor' is a person who renders service for a specified recompense for a specified result, under the control of a principal as to the result of the work only, and not as to the means by which the result is accomplished. (Lab.C. 3353; see *Torres v. Reardon* (1992) 3 [Cal.App.4th] 831, 838, 5 C.R.2d 52 [self-employed gardener hired to trim homeowner's trees was independent contractor; agreement between parties specified the result, but not means of achieving it] . . . ." (2 Witkin, Summary of Cal. Law, *supra,* Worker's Compensation, § 189, p. 770.) And again, Le was told point blank by Vu that he did not qualify for worker's compensation.

There are, in short, triable issues of fact whether either of the exclusions Global Hawk relied on applies. Ignoring that, the trial court ruled as it did, relying on *Perry* and *Consumers,* and the language of the federal regulations. That reliance, we conclude, was misplaced. Before turning to a demonstration of why, to put the cases in perspective we digress to discuss the federal regulations.

11

## The Federal Regulations and the MCS-90 Endorsement

Under the FMCSA, certain interstate motor carriers are required to meet the financial responsibility mandates of the Motor Carrier Act of 1980 (MCA), 49 U.S.C. § 10101 et seq., which contains regulations governing the industry.  Our colleagues in Division One have recently described the background of, and policy behind, these regulations, a description well known to Global Hawk.  Thus:

" 'The MCA and the subsequent regulations promulgated by the Federal Motor Carrier Safety Administration (FMCSA) require interstate motor carriers to obtain "a special endorsement . . . providing that the insurer will pay within policy limits any judgment recovered against the insured motor carrier for liability resulting from the carrier's negligence, whether or not the vehicle involved in the accident is specifically described in the policy." [Citation.]  In particular, the MCA provides that a commercial motor carrier may operate only if registered to do so, 49 U.S.C. § 13901, and must be "willing and able to comply with . . . [certain] minimum financial responsibility requirements," *id.* § 13902(a)(1) [(italics added)].' [Citation]  Proof of minimum financial responsibility can be demonstrated by (1) an MCS-90 endorsement issued by an insurer or insurers, (2) a surety bond for public liability issued by a surety, or (3) self-insurance, if authorized by the Federal Motor Carrier Safety Administration (FMCSA).  [Citations.] . . .

"Congress passed the MCA '[a]s part of its push to deregulate the trucking industry, increase competition, reduce entry barriers, and improve quality of service.' [Citation.]  The purpose of the requirement that motor carriers demonstrate minimum financial responsibility is to address the concerns of legislators who ' "fear[ed] that increased safety problems [would] result from the expanded entry provided in [the MCA]" and that "increased entry [would] open the highways to truckers who might have little concern for the safe operation and maintenance of their vehicles, thereby posing a threat to those who share the highways with them." [Citation.]  The MCA, therefore, included provisions addressing these concerns as well as the "abuses that had arisen in the interstate trucking industry which threatened public safety, including the use by motor

12

carriers of leased or borrowed vehicles to avoid financial responsibility for accidents that occurred while goods were being transported in interstate commerce." ' [Citations.]" (*Century-National Ins. Co. v. Global Hawk Ins. Co.* (2012) 203 Cal.App.4th 1458, 1464-1465; fn. omitted.)

*Perry*, Golden Hawk's primary authority, observed that the Act had two purposes: (1) "[T]o protect members of the public from motor carriers' attempts to escape liability for the negligence of drivers by claiming their drivers were independent contractors," and (2) "to provide 'enhanced protection of the health of commercial motor vehicle operators.' " (*Perry, supra,* 129 F.3d at p. 1074.)

The MFCSA mandates that every liability insurance policy covering a motor carrier contain a MCS-90 endorsement. That endorsement requires the insurer to pay any final judgment "recovered against the insured for public liability," as a result of the negligent operation of any vehicle, regardless of whether the vehicle is specifically described in the policy and despite the insured's failure to comply with policy conditions. (See 49 C.F.R. §§ 387.7(a), 387.9, 387.15 [containing form endorsement].) As described in the leading California insurance treatise:

"In effect, the endorsement shifts the risk of loss for accidents occurring in the course of interstate commerce away from the public by guaranteeing that an injured party will be compensated even if the insurer has a valid defense based on a condition in the policy. (See *Canal Ins. Co. v. Distribution Services, Inc.* (4th Cir. 2003) 320 F.3d 488, 489; *Harco Nat'l Ins. Co. v. Bobac Trucking Ins.* (9th Cir. 1997) 107 F.3d 733, 736.)

"(1) [7:1188.24] **Purpose**: The endorsement prevents the possibility that, through inadvertence or otherwise, some vehicles may be left off of a policy to the detriment of the public: '[T]he primary purpose of the MCS-90 is to assure that injured members of the public are able to obtain judgment from negligent authorized interstate carriers.' (*John Deere Ins. Co. v. Nueva* [(9th Cir. 2000)] 229 F.3d [853,] 857 [applying federal law].)

"The endorsement is a 'safety net in the event other insurance is lacking.' (*Carolina Cas. Ins. Co. v. Yeates* (10th Cir. 2009) 584 F.3d 868, 878 (en banc) [MSC-90

13

obligations triggered only if underlying policy does not meet federally-mandated minimum].)

"(2) [7:1188.25] **Prevails over policy limitation:** The mandatory endorsement creates a duty on the part of the insurer to cover an insured carrier's nondescribed vehicles despite a 'covered auto' limitation in the insurance policy itself. (*John Deere Ins. Co. v. Nueva, supra*, 229 F.3d at 857 [endorsement obligated insurer to indemnify permissive user of insured's noncovered auto trailer despite a 'covered auto' limitation in main policy]; *Adams v. Royal Indem. Co.* (10th Cir. 1996) 99 F.3d 964, 968.)" (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2013) ¶ 7:1188.23, pp. 7D-12-13.)

Finally, the regulations define an employee as follows: "*Employee* means any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle), a mechanic, and a freight handler." (49 C.F.R. § 390.5.)

That is the background against which *Perry* and *Consumers* were decided, which cases, we conclude, were improperly relied on here.

### *Perry* and *Consumers* Are Not Applicable

Appellant Perry was the widow of a driver killed while driving a truck owned by his employer, M&P Transportation (M&P), which truck had been leased to Sunset Express, Inc. (Sunset). Perry sued Sunset and M & P in state court. Sunset, which subsequently dissolved, entered into a consent judgment for $750,000 in consideration for a covenant not to execute, and assigned to Perry its rights against Harco, its insurer. Perry then sued Harco in federal court. The truck was not covered by Sunset's insurance policy. But, in the words of the Ninth Circuit, "The insurance policy, however, did contain an MCS-90 Endorsement for the protection of the public required by Department of Transportation regulations. The Endorsement requires Harco to indemnify Sunset for final judgments finding liability for negligence associated with any of Sunset's vehicles.

14

It specifically excludes liability resulting from injury to or death of Sunset's employees while acting in the course of their employment. (*Perry, supra,* 129 F.3d at p. 1073.)

The district court, using the definitions in the regulations mandating the Endorsement, concluded that Perry was an employee for the purpose of the Endorsement, because he was an "employee" under the plain language of the regulations applicable to the endorsement. It thus held that Perry was excluded from coverage. (*Perry, supra,* 129 F.3d at p. 1073.)

The Ninth Circuit affirmed, beginning its discussion as follows:

"Under the authority of the Motor Carrier Safety Act of 1980, 49 U.S.C. § 13906 (Motor Carrier Act), the Secretary of Transportation promulgated the regulations at issue in this case, 49 C.F.R. §§ 387.1, 390.1, and 390.5. The district court relied on the plain language of the regulations when it evaluated Appellant's claim.

"The Endorsement contained in Sunset's policy is set forth in and mandated by 49 C.F.R. § 387.1. The Endorsement provides insurance for liability 'for bodily injury or death of any person . . . excluding injury to or death of the insured's employees while engaged in the course of their employment.' (49 C.F.R. § 387.1.)

"The relevant definition of 'employee' is found in 49 C.F.R. § 390.5. The term is defined as 'a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle).' (49 C.F.R. § 390.5.) This definition applies to the entire chapter. (See 49 C.F.R. § 390.1.)

"For the purpose of the Endorsement, the district court concluded that Perry was an employee of Sunset's '[a]s a matter of law.' Therefore, this death was not covered by the Endorsement." (*Perry, supra,* 129 F.3d at p. 1073.)

Perry argued that the Court of Appeals should depart from the plain language of the regulations for two reasons: (1) the plain language interpretation does not fulfill some of the purposes of the Motor Carrier Act, and (2) the interpretation produces results that are unfair. (*Perry, supra,* 129 F.3d at p. 1074.) The court rejected both contentions, in an analysis that was all of a page and a half. Notwithstanding its apparent agreement with Perry's argument that the purposes of the Act would be thwarted by its conclusion, it

15

nevertheless held that "every part of the regulations need not fulfill every purpose of the legislation." (*Ibid*.)

Turning to Perry's second point, the court said this: "According to Appellant, if the district court's opinion is not reversed, 'all leased drivers would be left without any source for compensation for injuries or death arising out of the negligence of the parties for whom they were performing contract-based services.' This appeal is limited to the construction of the Endorsement in Harco's policy insuring Sunset. We express no opinion whether Appellant had a right to recover from Sunset as specified in the consent judgment. Moreover, Appellant does have a source of compensation for her husband's death: Workers' Compensation." (*Perry, supra,* 129 F.3d at p. 1075.)

*Perry* is distinguishable on three fundamental bases: there is no MCS-90 endorsement on the policy here; the truck was insured on the V&H policy; and Le was, at least according to what he was told by Vu, not eligible for worker's compensation.

As mentioned above, one of Le's "additional disputed facts" was that there was no MCS-90 endorsement on the policy. Golden Hawk did not even respond to this, admitting that there was no such endorsement. Indeed, there was express testimony on the point, including from Global Hawk Vice President Sahorta, who testified about the policy in issue here, authenticating it and its terms. His testimony confirmed that the policy had a total of 32 endorsements, not one of which was the MCS-90 endorsement. Sahorta was also asked if the policy contained an exclusion for "independent contractors." He could find none. And the policy contained absolutely no reference to the regulations.

In sum, while *Perry* affirmed the district court's ruling, it made clear that the sole reason it did so was that it was construing only the scope of the MCS-90 endorsement, as opposed to any additional coverage that could have been, but was not, provided in an underlying insurance policy. To again quote from *Perry*: "This appeal is *limited to the construction of the [MCS-90] endorsement in Harco's policy insuring Sunset.*" (*Perry, supra,* 129 F.3d at p. 1075, italics added.)

16

*Perry* does not stand for the proposition that the definition used in the FMCSA should supplant the definition set forth in an underlying policy of insurance, especially when, as here, it would displace an insurer's obligation to pay a covered claim. Indeed, the law and regulations are to the contrary. (*Carolina Cas. Ins. Co. v. Yeates, supra,* 584 F.3d at pp. 882–883; C.F.R. § 387.15 ["all terms, conditions, and limitations in the policy to which endorsement is attached shall remain in full force and effect as binding between the insured and the company"].)

*Consumers*, *supra,* 307 F.3d 362, the other case relied on by the trial court is similar—and similarly distinguishable. The issue there was whether Paillet, a driver for P.W. & Sons Trucking (PWS), was an employee excluded from coverage under PWS's commercial insurance policy. The district court held that he was. The Fifth Circuit affirmed, again an affirmance that does not avail Global Hawk.

To begin with, and unlike the situation here, the policy did not define employee. (*Consumers, supra,* 307 F.3d at p. 362, fn. 2 ["the policy does not define the term employee"].) The policy was a public liability policy purposefully designed for interstate carriers, to satisfy the minimal requirements of the FMCSA. The Court of Appeals concluded that the parties must have intended to interpret the term "employee" in a manner consistent with those minimal requirements. (*Id.* at pp. 365–367 and fn. 5.) In other words, because the FMCSA did not require shipping carriers to provide coverage for its employees, the FMSCA-specific policy should not be construed to provide coverage in excess of that demanded under the FMCSA.

*AmeriGas Propane, LP v. Landstar Ranger, Inc., supra,* 184 Cal.App.4th 981, though involving a different issue than insurance coverage, is instructive. That case arose out of a lawsuit by an injured truck driver (King) and his wife, who settled a personal injury action they had filed against AmeriGas. AmeriGas brought a cross-complaint against Landstar, a motor carrier with which it had contracted for the transport of the propane tanks that injured King. The trial court granted Landstar's motion for summary judgment, on the basis that King was an employee of Landstar, and since Landstar had

17

worker's compensation covering him, the cross-complaint was barred under the worker's compensation exclusive remedy doctrine. (*Id.* at pp. 984-985.)

The Court of Appeal reversed, concluding there was a triable issue of fact whether King was an employee under state law. Doing so, the court discussed some of the regulations in the Motor Carrier Act (*AmeriGas Propane, supra,* 184 Cal.App.4th at pp. 996–997), and then discussed *Perry,* noting its observations about a " 'split in the circuits as to whether motor carriers are liable under the Motor Carrier Act for injuries to drivers of leased trucks, and not just members of the public.' " (*Id.* at p. 997.) The court then said that while *Perry* did not resolve the split, *Perry* did confirm the two purposes of the Act quoted above: "(1) '[T]o protect members of the public from motor carriers' attempts to escape liability for the negligence of drivers by claiming their drivers were independent contractors,' [citation] and (2) 'to provide "enhanced protection of the health of commercial motor vehicle operators." ' [Citation.]" (*Ibid.*)

The Court of Appeal then went on to conclude as follows: "Thus, even though under FMCSR part 376.12(c)(1) (2009) a truck lease must contain language that the carrier has exclusive possession, control, and use of the leased truck, and the carrier is completely responsible for the operation of the truck, *these mandatory lease provisions do not transform an agreed upon independent contractor relationship between the carrier and truck owner/operator into an employee relationship under state law.* (FMCSR, § 376.12(c)(4) (2009).)" (*AmeriGas Propane, supra,* 184 Cal.App.4th at p. 999, italics added.) And two pages later, the court noted that the purpose of the FMCSA regulations "is to protect drivers *regardless* of whether they are employees *or independent contractors* under state law." (*Id*. at p. 1001 (italics added).)

**Some Closing Observations**

As indicated above, Le's position is that no MCS-90 endorsement was attached to the policy. Global Hawk's position does not expressly take issue with this, though its brief does contain this quizzical comment: "Of course the policy had an MCS-90, such an endorsement is mandated by the federal regulations, as [Le] states. While the issue was not raised below by [Golden Hawk], since the MCS-90 as such is not applicable to

18

this loss and is not the basis for the motion, the exclusions and the regulations are the basis, an MCS-90 Endorsement was attached to the policy at the request of V&H, the insured, prior to the loss. [¶] What the MCS-90 does is inform the policy as to intent of the parties in procuring insurance to comply with federal financial responsibility requirements necessary to obtain a permit to haul cargo in interstate commerce. The MCS-90's express preclusion of recovery for injuries by a driver (either an employee or an independent contractor) support the definition of employee in the Act and the regulations."

At another point Golden Hawk asserts that "Since the policy at issue was designed to comply with the Act and the regulations promulgated pursuant to the Act, the policy terms must be read in the context of and informed by the definitions of the Act and the regulations. Pursuant to those definitions, Mr. Le was an employee because he was a driver and was engaged in operating the motor vehicle and his activities directly affected the safety of the motor vehicle."

Global Hawk cites nothing in support of this, and we are unaware of any principle of insurance law that something external to an insurance policy can be read to "inform" what the policy in fact provides. (See *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 821–822 [parties' intent is to be inferred "solely from the written provisions of the contract"].) To the extent Global Hawk is trying to argue that the mere *possibility* that a policy *could be* augmented by an MCS-90 Endorsement, the law is otherwise. For example, an insured cannot be held bound to a definition applicable to an endorsement not included in the policy. As the Supreme Court put it in *Haynes v. Farmers Ins. Exchange* (2004) 32 Cal.4th 1198, 1204: "But to be enforceable, any provision that takes away or limits coverage reasonably expected by an insured must be 'conspicuous, plain and clear.' (*Steven v. Fidelity & Casualty Co.,* (1962) 58 Cal.2d 862, 878.) Thus, any such limitation must be placed and printed so that it will attract the reader's attention. Such a provision also must be stated precisely and understandably, in words that are part of the working vocabulary of the average layperson. [Citations.] The burden of making

19

coverage exception and limitations conspicuous, plain and clear rests with the insurer. [Citations.]"

## DISPOSITION

The summary judgment is reversed.  Le shall recover his costs on appeal.

_____
Richman, J.

We concur:

_____
Haerle, Acting P.J.

_____
Brick, J.[*]

---

[*] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

20

A137976, *Global Hawk Ins. Co. v. Le*


Trial Court:                                          Alameda County Superior Court

Trial Judge:                                       Honorable Ronni MacLaren

Attorney for Plaintiff and Respondent:       NorCal Logistics Lawyers Group, Dominic G. Flamiano

Attorneys for Defendant and Appellant:      Carpenter, Zuckerman, & Rowley, John C. Carpenter, Maureen Johnson